Durfee, Judge,
delivered the opinion of the court:
The single question presented in this case is whether the Secretary of the Navy and the Board for the Correction of Naval Records acted arbitrarily in declining to reconsider the plaintiff’s request for relief.
In April 1944, while he was serving as a warrant officer in the Navy, the plaintiff was convicted by a general court-martial of an unauthorized absence and sentenced to forfeitures for six months. One year later he was again tried by a general court-martial and convicted of an unauthorized absence and disobedience of a lawful order of a superior officer. An approved sentence of dismissal was ordered into execution and the plaintiff was, accordingly, dismissed from the Navy on May 31,1945.
*161 On May 4,1948, the plaintiff applied to the Board for the Correction of Naval Records for a change in the character of his discharge, requesting also that he be reinstated. On April 26, 1949, the Board recommended that the Secretary of the Navy approve a change in plaintiff’s records from separation by dismissal to separation under honorable conditions and that he be reenlisted in his former permanent enlisted grade and transferred to the U.S. Fleet Naval Reserve. The Secretary approved only the first recommendation. The Board notified the plaintiff of the decision of the Secretary on January 18,1950. Several days later the plaintiff was informed that it had been determined that his request for reenlistment should be denied and that any further relief of this nature was beyond the jurisdiction of the Board and that any questions in this regard would have to be taken up with the Chief of Naval Personnel.
Apparently the plaintiff does not question the validity of either of his court-martial convictions nor does he contend that the actions of the Board and the Secretary, up to this point, were arbitrary or capricious. The plaintiff’s present counsel wrote to the Correction Board in November 1957 inquiring whether plaintiff’s case had ever been presented to the Board and whether it would be possible to reopen the case in order to obtain plaintiff’s transfer to the Fleet Reserve. He was informed that the plaintiff’s request for transfer to the Fleet Reserve had been fully considered at the time of the Board’s initial consideration of the case and found to be lacking m merit and that reconsideration was possible only on the basis of additional evidence not previously presented.
Plaintiff’s counsel again wrote to the Correction Board requesting it to further consider transferring plaintiff to the Fleet Reserve, effective as of the date of his dismissal. He again received a reply from the Board this time stating that the information submitted had been carefully examined and the conclusion had been reached that no error or injustice had been committed in not allowing the plaintiff to reenlist. Plaintiff’s counsel next wrote to the Secretary of the Navy on May 1,1958, requesting that he reopen the Peterson case and reconsider the original recommendation. An Assistant *162 Secretary of tbe Navy replied to plaintiff’s counsel asserting that as a result of his communication the case had been completely reexamined and further stating that the Secretary had personally considered the question of reenlisting the plaintiff on two different occasions, deciding against such action both times. The Assistant Secretary concluded by saying that in view of the offenses committed by the plaintiff, he was in complete agreement with the prior decisions not to reenlist the plaintiff. This is the action of the Secretary which the plaintiff alleges to have been arbitrary. He seeks to recover retainer or retired pay since the date of his separation, May 31,1945.
In the May 1, 1958, letter from plaintiff’s counsel to the Secretary, counsel maintained that the jurisdiction of the Correction Board had been enlarged by the Act of October 25,1951,65 Stat. 655, amending section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 812, 837, and. attention was invited to the opinions of this court in Boruski v. United States, 140 Ct. Cl. 1 (1957) and Egan v. United States, 141 Ct. Cl. 1 (1958). Plaintiff’s position really is that either the Board or the Secretary acted arbitrarily under the circumstances in refusing to reconsider plaintiff’s request relative to the Fleet Reserve.
In addition to pointing out that the Fleet Reserve phase of plaintiff’s case had been previously considered, in replying to the first inquiry by plaintiff’s counsel the Board pointed out that its procedures authorized further hearing only upon the presentation of evidence not previously considered.[1] Section 207 of the Legislative Reorganization Act of 1946, supra, had provided, in part, that the actions of the service Secretaries through boards of civilian officers would be accomplished under procedures set up by the Secretaries. Under this provision whether to recommend further hearings was not a matter of right but of discretion with the Board and the Secretary and, clearly, the plaintiff had not complied with the procedural requirements of the Board in order to warrant such reconsideration. In reply to a later communication on behalf of plaintiff the Board asserted that consideration had been given to the material included *163 in that letter, and that it contained nothing that would canse the Board to alter its original decision which it considered to have been thoroughly explored. We must accept the statement of the Correction Board that it did give consideration to plaintiff’s reasons for believing that he deserved to have his case reopened. Apparently they were not compelling to the Board, and it seems to us that this in itself refutes the plaintiff’s claim that the Board’s action was arbitrary, capricious, or unlawful.
It is true that the Secretary refused to alter his stand against affording plaintiff reconsideration in spite of the authorities offered by him in support of that position. It is also true that this was reported to plaintiff in a rather terse fashion. In taking this action the Secretary was acting under the 1956 codification of the Correction Board statute found at Title 10 U.S.C., § 1552(a) which says that a Secretary may correct a record when he considers it necessary to correct an error or to remove an injustice. Again we see that the Secretary was vested with discretionary powers under this Act to take corrective action when he considered it necessary.
Notwithstanding the brevity of the Assistant Secretary’s final reply to plaintiff, it seems clear from the language of that letter that the entire matter had been reexamined including the legal arguments which had been made on his behalf. This reply also reflected that consideration had been given to the fact that the plaintiff, as a warrant officer, had been convicted of more than one offense. This hardly justifies, we think, the complaint that “[i]t is difficult to imagine a more arbitrary manner of disposing of the claim of any individual.” The record indicates, on the contrary, that a considered decision as to plaintiff’s application was rendered by the Assistant Secretary.
The plaintiff says that the Act of October 25,1951, supra, enlarged the jurisdiction of the Correction Board. The principal effect of that legislation was to authorize payment of claims which were found to be due as a result of actions theretofore taken under the authority of the original section 207 of the Legislative Reorganization Act of 1946, supra. If any actions taken by the Correction Board prior to the *164 passage of the 1951 Act had resulted in claims for loss of pay they could not have been paid until after passage of the Act.
In this connection it is interesting to note that the relief requested in 1958, namely, transfer to the Fleet Eeserve as of the date of plaintiff’s original dismissal on May 31, 1945, was not the same as the relief originally recommended by the Board but declined by the Secretary, which was reenlistment in the Navy as of a later date with immediate transfer to the Fleet Eeserve. Unquestionably, the Secretary has general powers to supervise naval affairs. A recommendation by the Secretary that plaintiff be permitted to reenlist would not have required any further correction of naval records. Had plaintiff been permitted to reenlist and then transfer to the reserve any right to pay accruing as a result would have arisen out of a current or present record rather than from a record corrected in accordance with the original section 201 of the Act. Consequently, we do not see that the 1951 enlargement of the Act, if such there was, conferred jurisdiction on the Board or the Secretary to accomplish anything that could not have been accomplished originally had the Secretary decided to approve the Board’s recommendation that plaintiff be reenlisted.
Furthermore, the additional extension of executive clemency inherent in the change in character of plaintiff’s separation is distinct from any Board recommendation that plaintiff be allowed to reenlist and it does not necessarily follow that the Board believed that the reenlistment had to be accomplished before an injustice could be completely expunged from plaintiff’s records.
A review of the two cases principally relied on by the plaintiff reveals significant differences between them and the instant case. In the Boruski case, supra, the plaintiff made application under section 12 of the Act of May 5, 1950, 64 Stat. 107,141, to have the Judge Advocate General review a court-martial conviction and sentence to dismissal. He did so and found that the evidence would not legally support a finding of guilty and that an injustice had been done the plaintiff in that case through his conviction and sentencing. He ordered the substitution of an honorable discharge effective as of the same date as the original dismissal. This court *165 beld, however, that the effective date of the discharge was the date on which the Judge Advocate General took his action vacating the court-martial sentence, and, accordingly, accrued pay and allowances were awarded. In this case, the action of the Board and the Secretary in re-characterizing plaintiff’s separation was not a part of the judicial process as was the vacation of sentence for Boruslri; rather it was, as we have already noted, the exercise of additional clemency. The Board did not determine that plaintiff should not have been tried and convicted. Because of both the underlying facts and the statutory procedures involved, the Borushi case cannot afford the present plaintiff any comfort.
The same must be said of the Egan case, supra, in which the petitioner had been separated honorably for medical reasons through mistaken identity. The Correction Board can-celled the discharge calling it “illegal and void.” The present plaintiff’s dismissal was not illegal or void and no such contention has been, or could be, made. To repeat, the Secretary’s action, on recommendation of the Board, was in tire nature of clemency. It was not required that plaintiff be reenlisted in order to either correct an error or remove an injustice.
We conclude, therefore, that neither the Board nor the Secretary acted arbitrarily in the premises regardless of the plaintiff’s claim that new and broader powers had been conferred on them by the 1951 amendment to the Legislative Eeorganization Act of 1946. Consequently, the plaintiff’s petition will be dismissed.
It is so ordered.
Laramore, Judge; MaddeN, Judge; Whitaker, Judge; and JoNes, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Mastín G. White, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, Paul Peterson, is a citizen of the United States and a resident of the city of San Diego, Calif.
2. (a) The plaintiff enlisted in the United States Navy on July 10, 1919, at the age of 19. Thereafter, he served *166 continuously in an enlisted status, with a generally excellent record, until June 25,1943. During Ms enlisted service, the plaintiff attained the rating of chief machinist’s mate.
(b)On June 25, 1943, the plaintiff was appointed as a warrant officer in the Navy. He subsequently served in that grade until May 31,1945.
3. While serving in the Navy as a warrant officer, the plaintiff on April 10, 1944, was tried and convicted by a general court-martial on a charge of absence from station and duty for 6 days after a period of leave had expired, his absence having been aggravated by the fact that he missed the sailing of his ship. The plaintiff was sentenced by the court-martial to lose $75 of his pay per month for a period of 6 months, the total loss of pay amounting to $450.
4. (a) On April 2, 1945, while the plaintiff was serving in the Navy as a warrant officer, he was tried and convicted by a general court-martial on two charges. The first charge was that the plaintiff had been absent from station and duty for 6 days after a period of leave had expired; and the second charge was that the plaintiff had disobeyed the lawful order of his superior officer. The court-martial sentenced the plaintiff to be dismissed from the naval service and to be confined for a period of 12 months.
(b) The convening authority on April 12,1945, approved the proceedings, findings, and sentence of the general court-martial referred to in paragraph (a) of this finding, but remitted the period of confinement.
(c) The Acting Secretary of the Navy submitted the record of the court-martial proceedings to the President of the United States on May 3,1945, with the recommendation that the sentence of the court-martial, as mitigated, be confirmed.
(d) On May 8, 1945, the President of the United States confirmed the sentence of the general court-martial, as mitigated.
(e) The plaintiff was dismissed from the Navy on May 31, 1945, in accordance with the actions referred to in the preceding paragraphs of this finding.
5. At the time of his dismissal from the Navy, the plaintiff had served on active duty as an enlisted man and as a warrant officer for a total period of more than 25 years.
*167 6. The plaintiff does not in the present litigation attack the validity of the court-martial conviction and sentence referred to in finding 4.
7. (a) Under the date of May 4, 1948, the plaintiff submitted to the Board for Correction of Naval Records an application seeking a “Change in type of Discharge.”
(b) Accompanying the formal application mentioned in paragraph (a) of this finding was a supporting letter from the plaintiff stating in part as follows:
I inlisted [sic] in the U.S. Navy July 10th 1919 and served continuously up to the time of my dismissal May 31th [sic] 1945. Twenty five years & ten months and was going to transfer to the fleet Navel [sic] Reserve but due to the war stayed in and although I was dismissed for 5 days & 17 hrs overleave I don’t think I deserve such a severe punishment as to loose [sic] everything I worked for. * * * I would just like to have a correction of my discharge. Most of all to be. reinstated. I don’t think I deserved [to lose] everything I worked for all my life. * * * Most of all a [sic] Honorable discharge for my last two years means everything in the world to me. * * *
8. (a) On April 26, 1949, the Board for Correction of Naval Records submitted to the Secretary of the Navy its report in connection with the plaintiff’s application referred to in finding 7.
(b) The report of the Board for Correction of Naval Records contained the following comment relative to the plaintiff’s conviction by a general court-martial on April 10, 1944 (see finding 3):
Legal. Accused was represented by counsel and pleaded guilty. He testified, in mitigation, that he went ashore in San Francisco with $400, got to drinking, met with foul play and was “rolled”. He awoke the next afternoon and his ship had sailed. He believed the ship had moved to San Diego so wired his wife for money to go there. He waited five days but received no money so turned in. He denied any intention to miss ship.
(c) With respect to the plaintiff’s conviction by a general court-martial on April 2, 1945 (see finding 4), the Board’s report contained the following comment:
*168 Legal. Accused was represented by counsel and pleaded not guilty to the Charge of AOL and guilty to the Charge of Disobedience of Orders. He testified in his own behalf to the effect that he had suffered a severe nervous condition as a result of the Battle of Leyte Gulf wherein his ship was shelled for two and one-half hours by surface units of the Jap Fleet. He described many sleepless nights, night sweating, etc., so that when he was granted overnight liberty on New Year’s day of 1945, he went ashore in San Diego and had some drinks with another officer and his wife. They began talking about the Battle of Leyte Gulf. He became very nervous, walked out, suffered a “lapse of memory” and remembered nothing until he awoke 6 days later aboard his ship.
(cl) The Board’s report contained the following comment relative to the plaintiff’s medical record:
Active medical history of miscellaneous minor ailments during his 25 years of service. Not remarkable except for a history of moderate Hypertension and combat neurosis as indicated in testimony at second GCM trial. Examined on 30 May 1945, and found “physically qualified for honorable conditions discharge” with defects noted relative to false teeth and defective vision. It would appear that the examining doctor was not aware of the true nature of subject’s pending Dismissal as there is nothing in his remarks to indicate any particular type of medical discharge was necessitated or recommended.
(e) The Board’s report listed the following mitigating factors that were pertinent to the plaintiff’s case:
(1) Excellent enlisted record for 23 years of continuous service. (2) Extensive combat duty particularly during the Battle of Leyte Gulf (Second Battle of the Philippines). (3) Combat neurosis as indicated by the medical testimony at second GCM trial and as indicated by remarks of two highly unsatisfactory fitness reports. (4) Total unauthorized absence of 12 days while serving as a Machinist. (5) Fitness reports indicate that subject, although a good enlisted man for 23 years, apparently was not “officer material”. (6) Subject was eligible for transfer to the Fleet Naval Keserve in 1939, as such, his dismissal in lieu of reversion to permanent enlisted status is a much more severe penalty than that inflicted in the ordinary Dismissal case. The effect is *169 to deprive him of a retainer of approximately $100 per month for life.
(f) The Board’s report also contained the following remarks:
In view of Petitioner’s early excellent record as an enlisted man for 23 years; his extensive sea and combat duty; the fact that his total absence (resulting in 2 trials by GCM) amounted to 12 days; and other extenuating circumstances including his medical history of combat neurosis, the Board was of the opinion that further clemency is warranted. Accordingly, it was the decision of the Board that the dismissal should be changed to Separation Under Honorable Conditions (but without a certificate of satisfactory service) and that Petitioner should be reenlisted in his highest enlisted rating with immediate transfer to the U.S. Fleet Naval Reserve.
(g) The Board’s decision was stated as follows:
It is the decision of this Board that the naval record of Paul (n) Peterson, ex-Machinist, USN (197 241) be corrected to show that his dismissal has been changed to Separation Under Honorable Conditions; and that he be reenlisted in the naval service with his former enlisted rating of chief machinist’s mate (PA), without regard to present physical condition, and that he then be immediately transferred to the U.S. Fleet Naval Reserve. The Chief of Naval Personnel is authorized and, directed to take appropriate action to effect the foregoing decision of the Board.
9. On December 2,1949, the Acting Secretary of the Navy took the following action on the report of the Board for Correction of Naval Records relative to the plaintiff’s case:
1. That portion of the decision of the Board in the subject-named case which recommends that his dismissal be changed to a separation under honorable conditions is approved. The administrative action recommended by the Board to re-enlist Peterson in the Navy with the intention of transfer to the Fleet Naval Reserve is disapproved.
10. (a) On January 18,1950, the Acting Chairman of the Board for Correction of Naval Records addressed to the plaintiff a communication stating as follows:
*170 1. As you know, a review of your naval record lias been held in accordance with the regulations and procedures governing tbe Board for Correction of Naval Records. It is with, pleasure that I transmit herewith, to you, a letter from the Secretary of the Navy whereby your naval record is officially corrected to show that you were separated from the naval service under honorable conditions.
2. However, it has been determined that your request for re-enlistment and/or transfer to the TJ.S. Fleet Naval Reserve cannot be granted under the facts and circumstances of your case.
(b) Accompanying the letter referred to in paragraph (a) of this finding was a communication dated January 18,1950, from an Assistant Secretary of the Navy to the plaintiff, stating as follows:
1. Pursuant to the approved decision of the Board for Correction of Naval Records dated 2 December 1949, the Secretary of the Navy has determined, this date, that your dismissal from the naval service be changed to Separation Under Honorable Conditions.
2. I am pleased to advise you that appropriate changes will be made in your record.
(c) The plaintiff was not officially notified that the Board for Correction of Naval Records had recommended his reenlistment in his former enlisted rating of chief machinist’s mate and his immediate transfer to the Fleet Naval Reserve (see finding 8(g)); and he was unaware of this recommendation until he was informed of it by his present attorney on or about April 2,1958.
11. On January 18, 1950, the Acting Chairman of the Board for Correction of Naval Records sent to the Chief of Naval Personnel a memorandum stating in part as follows:
1. In accordance with Section 207 of * * * [the Legislative Reorganization Act of 1946], the Board for Correction of Naval Records has reviewed allegations of error in the service record of the subject named petitioner [Paul Peterson]. The date of review was 26 April 1949.
2. The Secretary of the Navy has reviewed the proceedings and approved the decision of the Board as follows:
That the naval record of Paul (n) Peterson, ex-Machinist, USN (197 241) be corrected to show that his *171 dismissal has been changed to Separation Under Honorable Conditions.
12. On January 20,1950, the plaintiff wrote to the Chairman of the Board for Correction of Naval Records and inquired about reenlistment in the Navy. He received a reply dated January 24, 1950, from the Executive Secretary of the Board, stating in part as follows:
Matters pertaining to enlistment of persons into the naval service and/or transfer to the Fleet Naval Reserve are administrative functions coming under the cognizance of the Chief of Naval Personnel and the Secretary of the Navy, respectively. As indicated in our final action letter to you, careful consideration has been given to your case and it was determined that your request for re-enlistment and transfer to the Fleet Naval Reserve should be denied. It would appear therefore that the further relief which you seek has been finally determined in the negative and any further request for information in that regard should be directed to the Chief of Naval Personnel, inasmuch as the relief which you now seek is beyond the jurisdiction of this Board.
I regret that my reply can not be more favorable.
13. (a) Under the date of March 28, 1952, the Executive Secretary of the Board for Correction of Naval Records, acting by direction of the Chairman of the Board, sent to the plaintiff a communication stating in part as follows:
Public Law 220, 82nd Congress (65 Stat. 655), authorizes the Department of the Navy to pay claims which are found to be due as a result of corrective action talrpm by the Board for Correction of Naval Records.
The enclosed form should be signed and returned in the envelope provided. Upon receipt of the form, properly signed, appropriate pay records will be audited and you will be advised of the amount of the claim, if any, as determined by the Chief of the Bureau of Supplies and Accounts in the light of the decision of the Board for Correction of Naval Records. The acceptance of any settlement shall constitute a complete release of the claim.
(b) The plaintiff has never returned the form which accompanied the letter referred to in paragraph (a) of this finding, nor has the plaintiff submitted a claim for any *172 monetary benefits resulting from the approved action of the Board for Correction of Naval Records in bis case.
14. On November' 15, 1957, tbe plaintiff’s present counsel wrote to the Board for Correction of Naval Records a letter relative to the plaintiff’s case, in which he stated in part as follows:
The above-named man has consulted me concerning a possible case before your Board. He does not write too coherently and I am not quite sure about other actions he may have taken in connection with his case. # % * * *
I am writing at this time to inquire whether or not this man’s case was ever presented to your Board and, if it was, whether I can now seek to reopen the case and try to obtain a transfer for him to the Fleet Reserve or the retired list. I may say in this connection that he had completed mo-re than 20 years’ naval service at the time of his discharge and would have been eligible for transfer to the Fleet Reserve had he not been court martialed.
In view of the fact that his discharge has been changed to one under honorable conditions, I feel that he can properly seek transfer to the Fleet Reserve. You will recall that the Board has, in some cases, granted relief in such cases.
15. On November 21, 1957, the Executive Secretary of the Board for Correction of Naval Records replied to the letter mentioned in finding 14, and stated in part as follows:
This case previously was the subject of considerable study by the Board. Following receipt of his application for a review of his Dismissal of 31 May 1945, a hearing was held on 26 April 1949. * * *
‡ $ $ $ $
At the hearing, which Mr. Peterson did not attend, his entire record was fully considered and the Board found that a correction of his record was warranted. The Secretary on 2 December 1949 approved the recommendation that Mr. Peterson’s Dismissal should be changed to a separation under honorable conditions.
Inasmuch as Mr. Peterson’s present request for a transfer to the Fleet Reserve or to the retired list was fully considered at the time of the Board’s initial consideration of his case in April 1949, but was found to be lacking in merit, reconsideration is possible only upon *173 presentation of additional evidence not previously considered. * * *
16. The plaintiff’s present counsel again wrote to the Board for Correction of Naval Records on March 13, 1958, concerning the plaintiff’s case. In this letter, plaintiff’s counsel stated in part as follows:
* * * [A]s pointed out by the United States Court of Claims in Egan v. United States, C. Cls. No. 50031, decided January 15,1958, Section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 812 which authorized the creation of correction boards “did not contain authority later enacted, for the administrative payment of claims of persons for losses of pay, etc., due as a result of the correction of military records.” Such authority was not given it until October 25, 1951, when Congress enacted Public Law 220 ( 65 Stat. 655), amending Section 207 of the Legislative Reorganization Act of 1946, supra, which provided in material part as follows:
“ (b) The Department concerned is authorized to pay, out of applicable current appropriations, claims of any persons * * * for losses of pay (including retired or retirement pay), allowances, compensation, emoluments, or other monetary benefits, as the case may be, which are found to be due on account of military or naval service as the result of the action heretofore taken pursuant to section 207 of the Legislative Reorganization Act of 1946, or hereafter taken pursuant to subsection (a) of this section: * * *” (Emphasis supplied.)
While I, of course, have not seen the actual decision of the Board of Review upon Mr. Peterson’s application, it would seem to me that in view of the fact that the Board apparently did not have authority at the time it considered his case to grant him any retirement benefits, it did not make a finding with respect to his entitlement to retirement. It would appear that such a finding would have been completely futile as the Board could not have, under the law as it was then written, have authorized his retirement in any event.
I am at this time making in behalf of Mr. Peterson, a request that he be transferred to the Fleet Reserve as of the date of his original dismissal from the Navy on May 8, 1945. In this connection, I wish to emphasize the fact that Mr. Peterson had, at that time, completed more than 20 years’ honorable enlisted and warrant officer service in the United States Navy. *174 Under the law, he was entitled to be transferred. to the Fleet Reserve in, I believe, Class F4D upon making application for such transfer. He unquestionably would have been transferred to the Fleet Reserve had it not been for the disciplinary problems in which he became involved. The Board, on its original consideration of his case, determined that the dismissal of Mr. Peterson was either the result of a mistake or constituted an injustice and so determined that the separation should be changed to one under honorable conditions. If entitled to a separation under honorable conditions, it would seem to follow that he should have been granted the retirement benefits he had earned through his long service in the Navy in lieu of being separated.
$ # $ * $
In view of the foregoing, I wish to again urge that further consideration to Mr. Peterson’s application for transfer to the Fleet Reserve or the retired list be given by the Board.
17. On April 1,1958, the Executive Secretary of the Board for Correction of Naval Records replied to the letter mentioned in finding 16, and stated in part as follows:
The possibility of recommending Mr. Peterson’s reenlistment and subsequent transfer to the Fleet Naval Reserve was thoroughly explored by the Board when it considered the case in April 1949. It was determined that Mr. Peterson should not be allowed to reenlist.
The evidence which you have submitted has been carefully examined and it is concluded that it does not tend to establish that an error was committed, nor was Mr. Peterson unjustly treated in not being allowed to reenlist.
In view of the foregoing, no further action is contemplated in Mr. Peterson’s case.
18. Under the date of May 1, 1958, the plaintiff’s present counsel wrote to the Secretary of the Navy a letter concerning the plaintiff’s application to the Board for Correction of Naval Records. In this letter, plaintiff’s counsel stated in part as follows:
At the time the Board considered Mr. Peterson’s application in 1949, Section 207 of the Legislative Reorganization Act oi 1946, 60 Stat. 812, which authorized the creation of correction boards, did not contain *175 any authority, later enacted, for the administrative payment of claims of persons for loss of pay, etc., due as the result of the correction of a military record. Such authority was not given the boards until October 25, 1951, when Congress enacted Public Law 220, 65 Stat. 655, amending Section 207 of the Legislative Reorganization Act of 1946, supra, and provided in material part as follows:
“(b) The Department concerned is authorized to pay, out of applicable current appropriations, claims of any persons * * * for losses of pay (including retired or retirement pay), allowances, compensation, emoluments, or other monetary benefits, as the case may be, which are found to be due on account of military or naval service as the result of the action heretofore taken pursuant to section 207 of the Legislative Reorganization Act of 1946, or hereafter taken pursuant to subsection (a) of this section: * * *” (Emphasis supplied.)
I have renewed Mr. Peterson’s application for correction of his record with the Board for Correction of Naval Records and, in connection with this renewed action, I find that the Board actually did do far more than simply recommend that Mr. Peterson’s dismissal be changed to a discharge under honorable conditions. Instead, it recommended that he be reenlisted in his former enlisted rate of chief machinist’s mate and immediately transferred to the Fleet Naval Reserve. Plowever, the Honorable Dan A. Kimball, then Secretary of the Navy, on June 10, 1949, disapproved the recommendation of the Board but stated that he would consider any alternative solution of the situation. The Board then gave the recommendation that the dismissal be changed to a discharge under honorable conditions and this was approved by the Secretary.
In view of the fact that the Board originally sought to give Mr. Peterson the very relief which I am now seeking for him and was not permitted to do so by the then Secretary of the Navy, it, quite understandably, is reluctant to reconsider Mr. Peterson’s case and has, in fact, declined to do so.
Accordingly, I am writing to you at this time to request that you examine the record in this case with a view towards determining whether or not the original recommendation of the Board was not the just and proper recommendation to make in this case. In considering this matter, I urge that you take into account the fact that the authority of the Board has been broad *176 ened by the amendment to Section 207, supra, which I have set forth above. More important, I wish to call yonr attention to two comparatively recent decisions of the United States Court of Claims which I feel are applicable here. The first of these decisions is that of Boruski v. United States, C. Cls. No. 417-56, decided October 9,1957. * * *
The second decision is the case of Egan v. United States, C. Cls. No. 50031, decided January 15, 1958. * * *
These rulings, I submit, are very applicable to the situation here for the Board for the Correction of Naval Records has already determined that Mr. Peterson’s original dismissal from the service _ was either the result of error or constituted an injustice. At that time, it wished to give him the full relief which the Court of Claims indicates in the Egan case should have been given. That is, restore him to the position he would have held except for the voided dismissal from the service. The then Secretary would not follow the Board’s recommendation so necessarily the Board did the next best thing and changed the dismissal to a discharge under honorable conditions. The Court of Claims’ rulings clearly establish that the original recommendation of the Board should have been followed by the Secretary and the complete relief to which Mr. Peterson legally was entitled, given to him. In view of the fact that Mr. Peterson was, at the time of his dismissal, eligible for transfer to the Fleet Reserve, the Board originally recommended such transfer. Under the rulings in Egan and Boruski, supra, that recommendation was the proper disposition of the case. Certainly, it is the just solution of the case.
In view of the foregoing, I respectfully request you to reopen the Peterson case and reconsider the original recommendation of the Board for Correction of Naval Records in the light of the change in the law and the decisions of the Court of Claims referred to above.
19. Having received no reply to the letter of May 1,1958, mentioned in finding 18, plaintiff’s counsel on October 6, 1958, wrote another letter inquiring about the status of the plaintiff’s case.
20. On October 31, 1958, an Assistant Secretary of the Navy wrote the following letter to plaintiff’s counsel:
This will acknowledge your letters of May 1 and October 6, 1958, concerning the case of Paul Peterson, former Machinist, U.S. Navy. As a result of your let *177 ter of May 1, tbis case bas been completely reexamined. In view of tbe legal points raised in yonr letter, this facet of the case bas also been reviewed at great length.
Tbe records clearly show that on at least two occasions the Secretary of tbe Navy bas personally considered tbe question of reenlisting Mr. Peterson, and both times decided not to do so. The first consideration was in February of 1946, when tbe Acting Secretary of the Navy, Mr. Struve Hensel, bad tbis point under consideration. Tbe next occasion, as you know, was as a result of a recommendation by the Board for Correction of Naval Records. Notwithstanding your earnest appeal and excellent brief in bis behalf, in view of tbe offenses by tbis Warrant Officer, I find myself in complete agreement with the decisions heretofore made not to reenlist him. In addition, the points of law which have been raised neither persuade me nor compel me to grant Mr. Peterson’s petition.
21. The plaintiff filed his petition in this court on February 20,1959.
22. No assignment or transfer of the claim asserted in this litigation, or of any part thereof or interest therein, has been made, and no person other than the plaintiff is the owner of or interested in such cla-im.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and his petition is therefore dismissed.

 17 Fed. Reg. 10243 (1952); 32 C.F.R. § 723.9.