Whitaker, Judge,
delivered the opinion of the court:
Plaintiff is a former enlisted member of the Navy. He claims that he is entitled to, and has been wrongfully denied, active duty pay and allowances from September 4, 1957, to March 31, 1958, Fleet Beserve retainer pay from August 18, 1947, until his completion of 30 years’ naval service, and, thereafter, retired pay except for the intervening period of active duty. Defendant has conceded that plaintiff is entitled to active duty pay and allowances to the extent of his claim. Plaintiff is entitled to retired pay only if he was entitled to be placed in the Fleet Beserve. We are, therefore, faced only with the question whether the Secretary of the Navy’s failure to place plaintiff in the Fleet Beserve was illegal.
Plaintiff asserts that his transfer to the Fleet Beserve was required by section 204 of the Naval Beserve Act of 1938 (52 Stat. 1175,1179), as amended by section 2 of the Act of August 10, 1946 (60 Stat. 993). That section provides, in pertinent part, as follows:
Members of the Navy who first enlisted in the Navy after July 1, 1925 * * * may upon their own request be transferred to the Fleet Beserve upon the completion of at least twenty years’ active Federal service. After *158 such, transfer, except when on active duty, they shall be paid at the annual rate of 2% percentum of the annual base pay and longevity pay they are receiving at the time of transfer multiplied by the number of years of active Federal service * * * Provided further, That all enlisted men transferred to the Fleet Reserve in accordance with the provisions of this section * * * shall, upon completion of thirty years’ service, be transferred to the retired list of the Kegular Navy, with the pay they were then legally entitled to receive * * * Provided further, That a fractional year of six months or_ more _ shall be considered a full year for purposes of this section * * * in computing years of active Federal service and base and longevity pay * * *.
Plaintiff first enlisted in the Regular Navy on May 20, 1927, and was discharged from that enlistment on July 18, 1931. He reenlisted on September 22,1931, and served continuously until August 18, 1947, when he embarked on an unauthorized absence from duty that terminated with his apprehension by the FBI (Federal Bureau of Investigation) on September 4, 1957. Before his unauthorized absence began, plaintiff had applied for transfer to the Fleet Reserve by reason of having completed more than 19 years and 6 months of active service. This request was approved, and the Bureau of Naval Personnel advised plaintiff’s commanding officer that plaintiff would be transferred to the Reserve on December 3,1947. However, during the interval between the date plaintiff made his request and the date the approval reached his commander, plaintiff was transferred to a different duty station. As a result, he was not immediately told that his application had been approved, and his subsequent absence from his ship prevented any later notification of the Bureau’s action.
After plaintiff was apprehended, he was tried by court-martial for desertion and was acquitted. Thereafter, the Chief of Naval Personnel directed that he be discharged with a general discharge under honorable conditions, and this was done on March 31, 1958. In February of the following year, plaintiff applied to the Board for Correction of Naval Records for a correction of his records to show that he would be permitted to reenlist or, in the alternative, to show that he had been transferred to the Fleet Reserve as *159 of August 17, 1947. The Board denied plaintiff the relief he requested, and its action was sustained by the Secretary of the Navy.
Plaintiff says that, since he has satisfied the statutory requirements as to length of active service, the Secretary was without authority to refuse to place him in the Fleet Eeserve.
Eecently, in Unger v. United States, 164 Ct. Cl. 400, 326 F. 2d 996 (1964), we held that an enlisted member of the Navy who was given an undesirable discharge after more than 20 years’ active service was not entitled to the status and pay of a member of the Fleet Eeserve under section 203 of the Naval Eeserve Act of 1938, supra. We said that both section 203 and section 204 of that Act contemplate that an enlisted member must be in an active duty status to be entitled to transfer to the Fleet Eeserve. In the case at bar, plaintiff was dropped from the rolls as a deserter shortly after the beginning of his unauthorized absence until the date he was apprehended, and, after 'his court-martial, he was given an administrative discharge. The Secretary’s approval of his application for transfer to the Fleet Eeserve could not have subsisted after plaintiff had been declared a deserter. As a result, that approval never became effective, and plaintiff was not placed in the Eeserve prior to his discharge. Plaintiff protested the administrative discharge given him after his acquittal by the court-martial on the ground that he was entitled to be placed in the Fleet Eeserve, but, as stated, this was rejected. Therefore, he is not entitled to the benefits of a member of the Fleet Eeserve unless the Secretary’s failure to transfer him thereto was an abuse of discretion.
We do not think that the Secretary was without authority to refuse to accord plaintiff the benefits of section 204 of the Naval Eeserve Act of 1938. Both counsel have advised us that the long-continued practice of the Navy in cases of this kind has been to deny a transfer to enlisted men with more than 20 years’ service who were under charges or who had become involved in discreditable activities at or near the end of their service. That interpretation of the statute, long continued, and, so far as we know, unchallenged successfully, is entitled to respect. As applied to a person who is absent *160 without leave for ten years and never voluntarily returned to bis post of duty, we think it cannot be successfully assailed. Sections 203 and 204 were never intended to confer on such a person the right to demand transfer to the Fleet Reserve.
In his opinion, Trial Commissioner Mastín G. White stated that:
* * * The purpose of establishing and maintaining the Fleet Reserve was to provide the Government with a trained body of men subject to recall to active duty when needed. United States v. Fenno, 167 F. 2d 593, 595 (2d Cir., 1948). The members of the Fleet Reserve were required by Section 206 of the Naval Reserve Act of 1938 (52 Stat. at p. 1179) to hold themselves in readiness to perform not more than 2 months’ active duty during each 4-year period in peacetime, and to be examined physically at least once during each 4-year period. For this, they were compensated in the form of retainer pay. Mulholland v. United States, 139 Ct. Cl. 507, 510 (1957).
Since plaintiff was unavailable for further duty or for examination to ascertain whether he remained qualified for such duty, he could not fulfill the requirements for membership in the Fleet Reserve.
Therefore, we conclude that it is not an abuse of discretion for the Secretary to refuse to transfer a man to the Fleet Reserve where, as here, his period of service culminates in an extended absence without leave. Peterson v. United States, 155 Ct. Cl. 159, 292 F. 2d 892 (1961).
Plaintiff is entitled to recover his active duty pay and allowances from the date of his apprehension to the date of his discharge. The case is remanded for proceedings under Rule 38 (c) to determine the amount of his recovery. The petition will be dismissed as to the balance of plaintiff’s claim.
FINDINGS OP PACT
The court, having considered the evidence, the report of Trial Commissioner Mastín G. White, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff was bom on July 8,1907. He is a citizen of the United States and a resident of the State of California.
2. The plaintiff first enlisted in the United States Navy *161 on May 20, 1927. Upon the expiration of his first term of enlistment on July 18, 1981, the plaintiff received an honorable discharge. He immediately enlisted in the Naval Reserve. The plaintiff was discharged from the Naval Reserve on September 21, 1931, in order that he might reenlist in the Regular Navy. The next day, September 22, 1931, the plaintiff reenlisted in the Regular Navy. Thereafter, the plaintiff served in the Regular Navy through several successive enlistments. His final enlistment in this series was on August 18, 1943, for a 4-year term of service ending August 17,1947.
3. On September 1, 1943, the plaintiff became a chief petty officer (chief gunner’s mate). He continued to serve in that rating throughout the remainder of his naval service.
4. (a) In the latter part of 1945, the plaintiff began drinking liquor to excess. This excessive drinking continued throughout the remainder of the 4-year term of the plaintiff’s then-current enlistment in the Navy. Because of it, the plaintiff no longer performed in a satisfactory manner duties commensurate with his rating.
(b) In December 1945, the plaintiff was absent without leave for a period of more than 18 days. He was convicted by a summary court-martial on January 8,1946, of this unauthorized absence, and he was sentenced to confinement for 30 days and loss of pay in the amount of $312.
(c) On February 25, 1947, the plaintiff without authority missed the sailing of his ship. He was convicted by a summary court-martial on April 5, 1947, of this offense, and he was sentenced to loss of pay in the amount of $210, but this amount was later reduced to $105.
(d) On April 30, 1947, the plaintiff was absent without leave for 17 hours; and on May 5-6, 1947, he was absent without leave for 23 hours. The plaintiff was convicted by a deck court on May 10, 1947, of these offenses, and he was sentenced to loss of pay in the amount of $45.
(e) On May 23-29,1947, the plaintiff was absent without leave for more than 6 days. He was convicted by a deck court on June 2,1947, of this offense, and the sentence, as approved, included loss of pay in the amount of $40 and restriction to the limits of the station for 20 days.
*162 5. (a) On June 4, 1947, the plaintiff transmitted to the Bureau of Naval Personnel (through his commanding officer) a written “Request for transfer, after 20 years’ service, to Fleet Reserve.” The document stated in part as follows:
1.Having served 19 years 07 months in the United States Navy * * * , I request transfer from general service to Fleet Reserve in accordance with existing laws, to be effected on or about (Set by BuPers).
(b) At the time of the submission of the request mentioned in paragraph (a) of this finding, the plaintiff was assigned to the U. S. Naval Receiving Station, San Francisco, California.
6. On June 27, 1947, the Bureau of Naval Personnel wrote a letter to the plaintiff’s commanding officer regarding the plaintiff’s request that he be transferred to the Fleet Reserve. This letter stated in part as follows:
1. * * * Please inform the subject man as follows:
(a) On 8 December 1947 he will have 20 years, 3 months, 3 days active Naval service with retainer pay in accordance with Public Daw 732-75th Congress, after transfer to the Fleet Reserve, at the rate of one-half base pay and on the retired list from the Fleet Reserve after completion of 30 years active and inactive service at the rate of one-half base pay plus permanent additions (longevity), provided there is no change in status.
(b) On 3 December 1947 he will have 20 years, 3 months, 3 days active Federal service with retainer pay in accordance with Public Law 720-79th Congress, after transfer to the Fleet Reserve, at the rate of two and one-half per centum of the base and longevity pay multiplied by the number of years of active Federal Service, plus 10% increases for extraordinary heroism if applicable ; and when transferred to the retired list for retired pay will remain the same as his retainer pay, provided there is no change in his status.
2. The Commanding Officer is requested to insure that:
(a) Subject man thoroughly understands the above.
❖ * * * *
3. Please direct Mhrphy to submit a written statement via his Commanding Officer to this Bureau * * * under which Public Law he elects to receive retainer and retired fay.
4. Upon receipt of the above statement, the Bureau will issue instructions concerning his transfer to the Fleet Reserve.
*163 7. In a letter dated July 9, 1947, and addressed to the Chief of Naval Personnel, the plaintiff referred to the letter dated June 27,1947, from the Bureau of Naval Personnel (see finding 6), and then stated as follows:
1. In accordance with reference (a) [the letter mentioned in finding 6], upon transfer to the Fleet Beserve, it is requested that I receive retainer and retired pay in accordance with Public Law 720-79th Congress, approved 10 August 1946.
8. On July 14, 1947, the plaintiff was transferred from the TJ. S. Naval Beeeiving Station in San Francisco to the Flag Administrative Unit, Commander Fleet Air, West Coast, San Diego, California, for further assignment.
9. (a) On July 21,1947, the plaintiff was assigned to the U.S.S. Bairoho in San Diego, California.
(b) The plaintiff was not given any duties to perform aboard the U.S.S. Bairoho. He was regarded as being temporarily assigned to the vessel while awaiting the end of his enlistment. While assigned to the Bairoho, the plaintiff spent most of his time ashore. His excessive consumption of liquor continued.
10. In a communication dated July 22,1947, the Chief of Naval Personnel informed the commanding officer of the U. S. Naval Beeeiving Station, San Francisco, California, that the plaintiff’s transfer to the Fleet Beserve was approved to become effective not earlier than December 3,1947. However, prior to the receipt in San Francisco of this communication, the plaintiff had left San Francisco and had gone to San Diego because of the action referred to in finding 8. For some reason that does not appear in the record, information concerning the communication of July 22, 1947, from the Chief of Naval Personnel was not forwarded to the plaintiff in San Diego; and he was not otherwise advised of the formal approval of his request that he be transferred to the Fleet Beserve.
11. (a) The 4-year term for which the plaintiff had enlisted on August 18, 1943 (see finding 2) expired at the close of August 17,1947. Sometime prior to 6 a.m. on August 18,1947, the plaintiff — without awaiting further word concerning his request for transfer to the Fleet Beserve, and *164 without taking any action to secure a discharge from the Navy — left the U.S.S. Bairoho. He never returned to the ship; and for a period of approximately 10 years thereafter, the plaintiff’s whereabouts was unknown to the Navy.
(b) The ship’s clerk on the U.S.S. Bairoho made an entry on the plaintiff’s service record to indicate that he was “Absent over liberty from 0600” on August 18, 1947. As the plaintiff’s absence continued, he was administratively declared to be a deserter on September 19,1947.
12. As the plaintiff’s whereabouts was unknown to the Navy at the time, he was not transferred to the Fleet Reserve on or after December 8,1947, in accordance with the action by the Chief of Naval Personnel that is referred to in finding 10.
13. After the plaintiff left the U.S.S. Bairoho as indicated in finding 11, he continued his excessive drinking of liquor for approximately 5 years. During that time, he was unable to hold a job because of his excessive drinking, and he was largely supported by his second wife, whom he married on September 11,1947.
14. In 1952, the plaintiff quit drinking liquor. He was aided in this program of abstinence by his wife, his physician, and Alcoholics Anonymous. Thereafter, the plaintiff became a steady worker.
15. On September 4, 1957, the plaintiff was apprehended in San Diego, California, by the Federal Bureau of Investigation as an alleged deserter from the Navy. On the same day, the FBI delivered the plaintiff to the U.S. Naval Receiving Station in San Diego. The plaintiff was retained under naval control for the purpose of a court-martial trial.
16. (a) On January 23 and 24, 1958, the plaintiff was tried in San Diego, California, on the following charge and specification by a general court-martial appointed by the Commandant of the Eleventh Naval District:
CHARGE : VIOLATION OP THE ARTICLES POR THE GOVERNMENT op the Navy, Article 8, Paragraph 21
Specification: In that Joseph Michael Murphy, 346 38 43, chief gunner’s mate, U.S. Navy, while so serving on board the U.S.S. Bairoho, did, on or about 18 August, *165 1947, desert from said ship and from the U.S. naval service and has remained in desertion until 4 September 1957.
(b) At the conclusion of the trial, the court-martial found the plaintiff “Not Guilty” of the charge and its specification.
17. After the plaintiff’s acquittal as indicated in finding 16, the Chief of Naval Personnel, by means of a dispatch dated March 31, 1958, directed that the plaintiff be given a general discharge under honorable conditions pursuant to Article C-10304, Bureau of Personnel Manual. The Chief of Naval Personnel further directed that the plaintiff was not to be reenlisted in the Navy without the authority of the Chief of Naval Personnel, that the plaintiff’s transfer to the Fleet Beserve was not authorized, and that no payments covering active-duty pay and allowances for the period from September 4,1957, to March 31,1958, were to be made.
18. The Navy issued to the plaintiff on March 31,1958, a general discharge under honorable conditions.
19. (a) At the time when the plaintiff was discharged on March 31, 1958, as indicated in finding 18, he submitted to the naval authorities in San Diego, California, a written statement protesting the discharge. He called attention to the fact that he had completed the required 20 years of service for transfer to the Fleet Beserve, and that such a transfer had been applied for prior to the expiration date of his last term of enlistment. The plaintiff further stated that he intended to appeal to the appropriate authorities for an honorable, rather than a general, discharge and for transfer to the Fleet Beserve.
(b) The Bureau of Naval Personnel was informed on April 5, 1958, of the plaintiff’s protest. The Bureau on April 8, 1958, pointed out that the plaintiff was privileged to submit a rebuttal concerning his general discharge and to make a representation in support of an application for reenlistment.
20. (a) On April 16, 1958, the plaintiff submitted to the Bureau of Naval Personnel a rebuttal concerning his general discharge and a representation in support of his application for reenlistment in the Navy.
*166 (b)On May 14, 1958, the plaintiff was informed that the administrative board of review appointed by the Chief of Naval Personnel had recommended that his reenlistment not be authorized, and, therefore, that the Chief of Naval Personnel did not authorize his reenlistment.
21. (a) Under the date of February 2,1959, the plaintiff submitted to the Board for Correction of Naval Kecords an application for the correction of his naval record. The application requested:
That I be permitted to reenlist in the United States Navy in the grade of Chief Gunner’s Mate and apply for transfer to the Fleet Reserve or in the alternative that I be transferred to the Fleet Reserve in the rate of Chief Gunner’s Mate credited with more than 20 years’ service from 17 August 1947.
(b) A hearing relative to the plaintiff’s case was held by the Board for Correction of Naval Records on August 24, 1959. The plaintiff was represented at the hearing by counsel.
(c) The Board for Correction of Naval Records rendered a decision on November 20,1959, to the effect that no change, correction, or modification of the plaintiff’s record was warranted.
(d) On December 8, 1959, the Secretary of the Navy approved the recommendation of the Board for Correction of Naval Records in the plaintiff’s case.
22. The plaintiff instituted the present action on June 1, 1961, to recover:
(a) an amount representing the active-duty pay and allowances of a chief petty officer, credited with more than 20 years’ service, for the period from September 4, 1957, to March 31,1958; and
(b) an amount representing the retainer pay of a chief petty officer, credited with the plaintiff’s length of service, for the period from August 18,1947, until the completion of 30 years’ total naval service, and then retired pay until the date of judgment (excluding the period from September 4, 1957, to March 31,1958).
23. The defendant has conceded in the present litigation that the plaintiff is entitled to recover an amount representing the active-duty pay and allowances of a chief petty officer, *167 credited with more than 20 years’ service, for the period from September 4,1957, to March 31,1958.
24. (a) No action, other than as stated in these findings, has been taken on the plaintiff’s claim in Congress or by any of the Departments of the Government.
(b) No assignment or transfer of the plaintiff’s claim, or of any part thereof or interest therein, has been made; and no person other than the plaintiff is the owner or interested in such claim.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover active duty pay and allowances from the date of his apprehension to the date of his discharge, and judgment is entered to that effect. The amount of recovery will be determined pursuant to Bule 38(c) in accordance with this opinion. The petition is dismissed as to the balance of plaintiff’s claim.
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on November 20,1964, that judgment be entered for plaintiff for $2,345.91.